United States District Court
District of Connecticut
FILED AT NEW HAVEN
5/23 2005
Kevin F. Rowe, Clerk
By_____ Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA   :
:
v.   : Crim. no. 3:00CR217(EBB)
:
BEN F. ANDREWS,   :
        Defendant.   : May 18, 2005

## MEMORANDUM IN SUPPORT OF MOTION TO PERMIT THE DEFENDANT TO REMAIN FREE ON BAIL PENDING APPEAL

***Introduction:*** During the course of the sentencing on May 2, 2005, the defendant indicated that he intended to appeal the judgment of conviction and asked the Court to consider allowing him to remain on bond pending appeal. We anticipate that following the sentencing proceeding on May 23, 2005, we shall file the notice of appeal, and this memorandum is submitted in support of our request that Mr. Andrews be granted bond pending appeal.

***General principles:*** As the Second Circuit has noted, "we do not believe that [the Bail Reform Act of 1966] intended . . . to eliminate bond pending appeal." United States v. Randell, 761 F.2d 122, 124 (2d Cir. 1985)

Under 18 U.S.C. § 3143(b)(1), the court shall order detention in the absence of a finding by clear and convincing evidence that (1) the defendant does not pose a risk of flight or a danger to others; (2) the "appeal is not for the purpose of delay"; and (3) the appeal presents "a substantial question of law or fact likely to result in" a reversal, an order for new trial or no imprisonment beyond time already served. See United States v. Taubman, 297 F.3d 161, 167 (2d Cir. 2002).

With respect to the first factor, we believe little argument is needed: the Court has presided over a lengthy trial of the defendant and has reviewed the presentence report, letters in the defendant's behalf, and sentencing arguments. In light of all this, little further argument is required to reach the conclusion that Mr. Andrews poses no risk of flight and no danger to others.

With respect to the second factor, as the lengthy post-trial memorandum of the defendant, the response of the United States, and the decision of the Court indicate, the

**JEREMIAH DONOVAN** • ATTORNEY AT LAW • PO BOX 554 • OLD SAYBROOK CT 06475 • (203) 388-3750 • JURIS NO 305346

issues presented in this case were complex, disputed and difficult to resolve: this appeal is serious and not taken for the purposes of delay.

With respect to the third factor, a district court is not required to make a finding that its own judgment is likely to be reversed. All the Court is required to find is that an appeal will present "a 'close' question or one that could very well be decided the other way." Randell, 761 F.2d at 124. Where, as here, the defendant has been convicted on more than one count, the substantial question must have a bearing on the other counts – that is, even if a reversal were all but certain with respect to a single count, bail should not be granted if affirmance were all but certain on other counts that had resulted in a sentence of incarceration. Morrison v. United States, 486 U.S. 1306 (1988)

***The government's principal claim is meritless:*** The government's principal argument is that the defendant's claims are jurisdictionally barred on appeal. This claim is utterly without merit.

There is no requirement that a defendant who has properly preserved an issue at trial also file a motion for a new trial or a motion for a judgment of acquittal, at the risk of being jurisdictionally barred from raising that issue on appeal. The government, we believe, does sometime makes this argument on appeal and the Court of Appeals generally ignores the argument, sometimes going so far as not even to acknowledge that the argument has been made. See, e.g., excerpt from government's brief in United States v. Wayne Sinclair ("Although the defendant made certain objections during the trial . . . . the defendant never made a motion for a new trial . . . . those claims are barred and this Court lacks jurisdiction to consider any of the defendant's claims for which the requested relief is a new trial") and Court of Appeals summary order (ignoring argument entirely) (attached hereto). While summary orders are not precedential authority, the panel's ignoring the government's claim entirely is some indication of the utter lack of merit to the argument that a properly preserved trial issue may not be considered on appeal unless it has been the subject of a motion for new trial.

The two cases cited by the government in support of its revolutionary contention

3

provide no support for its argument that claims properly preserved at trial are jurisdictionally barred if not also re-raised in a post-verdict motion. In United States v. McCarthy, 271 F.3d 387, 399 (2d Cir. 2001), the defendant argued on appeal that he should be granted a new trial because one of the witnesses against him had committed perjury. There was no indication in the record that McCarthy had properly raised this issue at all in the district court: he had not filed a motion for new trial within seven days of the verdict or within three years of the verdict (where there is newly discovered evidence) in order to raise this issue in the trial court. The Court of Appeals declined to consider his argument because the issue was one that had been never been raised, ruled on and preserved during the defendant's trial at all, and thus would not be considered on appeal. Similarly, in United States v. Moreno, 181 F.3d 206, 212 (2d Cir. 1999), the defendants also claimed post-trial that trial witnesses had committed perjury: the Court of Appeals did not consider the issue because it had never properly been raised, argued and ruled upon at trial.

By contrast, every issue raised in the our motions for new trial and for judgment of acquittal had been raised, argued and decided at trial, and thus have been properly preserved for appeal. We have been able to discover no reported case, and the government has certainly not cited any, in which an appellate court has declined to consider an issue on the ground that the issue, though properly preserved at trial, was not raised once again in post-verdict motions. In fact, we have been able to find no litigant, other than the United States Attorney for the District of Connecticut, who has ever made such an argument in the context of the issues that we raised at trial.

For example, with respect to jury instructions, many cases hold that in order to preserve questions as to an alleged error in, or omission from, a trial court's jury charge, a party must object before the jury retires to consider its verdict. F.R.Crim. P. 30(d) requires that a party objecting to an instruction must inform the court before the jury retires to deliberate, and that a "failure to object in accordance with this rule precludes appellate review. . . ." Accord., United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965),

4

cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966); see generally 9a Fed. Proc. L. Ed. § 22:1960 and authorities there cited. The rule does not require that a party who has properly excepted must then raise his objection once again in a post-verdict motion, and no case that we have been able to find has ever held that a defendant is required both to take a timely exception to the charge and then raise the issue again in a post-verdict motion.

Similarly, with respect to evidentiary issues (such as, in this case, the extent to which the court allowed the defendant to be impeached by claimed uncharged misconduct), appellate courts often hold that a party must make timely evidentiary objections and obtain a ruling on these objections from the trial court. See, e.g., United States v. Jackson, 345 F.3d 59, 64 (2d Cir. 2003); Fed.R.Evid. 103(a)(1)(providing that "[e]rror may not be predicated upon a ruling which admits . . . evidence unless . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context"). We certainly made timely trial objections with respect to each of the evidentiary issues raised in our post-trial motions; the government does not seem to contend otherwise; and there is no authority that holds that a party who has made a timely evidentiary objection is thereafter required to raise the same objection in a post-verdict motion in order to preserve the issue for review.

With respect to some of our issues which cannot easily be pigeonholed into a particular category such as jury-instruction or evidentiary claims, we are also unable to find any appellate decision holding that a failure to raise the issue post-verdict, when the issue has been fairly raised in the trial, is fatal to appellate review. For example, with respect to the government's failure to provide immunity to Jerome Wilson and Stan Aulfeld, there is no appellate case that sets forth the requirement of a post-verdict motion, and a review of cases considering the issue indicates that the issue is one that is generally raised, argued and ruled upon at trial. While there are a number of cases discussing the issue of the requirement of immunity for defense witnesses, the three cases cited by the

6

The government's principal argument against the granting of Ben Andrews' motion for bond -- that he will be precluded from raising on appeal issues properly preserved at trial but not properly resurrected in a post-trial motion -- is utterly without merit.

***Mr. Andrews' appeal presents "a substantial question of law or fact likely to result in" a reversal:*** Success on one of a number of issues raised during the course of trial would result in the reversal of all of the counts of conviction:

> Whether the government deprived Mr. Andrews of the right to a defense and to present witnesses in his own behalf when it granted immunity to Stack, and partial immunity to Sylvester and certain other witnesses, while refusing to provide immunity to Jerome Wilson and Stan Aulfeld. Whether the trial court erred in permitting the government to impeach by numerous unrelated specific acts of claimed misconduct, many of which the defendant was forced to deny in the presence of the jury, and whether the trial court erred in refusing to make any ruling as to the extent to which the government would be permitted to impeach by such alleged uncharged misconduct prior to the government's actually impeaching the defendant.

> Whether Mr. Andrews' sixth amendment right to counsel was violated by the order, later rescinded, that he not communicate with counsel during court recesses.

> Whether the right to a public trial and the right to be present at critical stages of the proceedings were violated by ex parte chambers conferences, in particular by conferences involving a potential witness against the defendant, George Spadoni.

Other issues arise with respect to particular counts and, unless the Court of Appeals were to find that the prejudice arising from those issues spilled over to other counts, a reversal with respect to those issues would not result in a full reversal of Mr. Andrews' conviction. It may also be that other issues will suggest themselves upon review of the transcripts. Leaving such issues aside, however, those issues set forth above have been the subject of extensive briefing by the defense, extensive response by the government, and careful and lengthy analysis by the Court. While the weight of a brief is not necessarily an indication of the weight of the issues discussed therein, the fact that the Court has given the issues extensive consideration is a good indication that these issues are not frivolous issues that can be dismissed with a marginal endorsement: they are

7

substantial issues that, if decided in Mr. Andrews' favor, would result in a reversal of his conviction. These issues satisfy the third factor established by 18 U.S.C. § 3143(b)(1).

*Conclusion*: Because Mr. Andrews satisfies the factors set forth in 18 U.S.C. § 3143(b)(1), we respectfully request the Court allow him to remain on bond pending appeal under the same conditions as those of his bond pending sentencing.

Respectfully submitted,

JEREMIAH DONOVAN
123 Elm Street--Unit 400
P.O. Box 554
Old Saybrook, CT 06475
(860) 388-3750
FAX 388-3181
Juris no. 305346
Fed.bar.no. CT 03536

## [PROPOSED] ORDER

The motion set forth above having been duly considered, it is hereby

GRANTED / DENIED

ELLEN BREE BURNS
UNITED STATES DISTRICT JUDGE

8

## CERTIFICATION

This is to certify that on this May 18, 2005 a copy of the above and foregoing was sent first class mail, postage pre-paid, to David Ring and William Nardini, Assistant United States Attorneys, c/o United States Attorney (New Haven), 141 Church Street, New Haven, CT 06508.

_____
Jeremiah Donovan

the district court sets." *United States v. McCarthy*, 271 F.3d 387, 399 (2d Cir. 2001); *see also* Fed. R. Crim. P. 33.

Where, as here, "a motion for a new trial is not timely, and 'there is no suggestion that the motion is based on newly discovered evidence,' the motion is deemed untimely, and [the Court] lack[s] jurisdiction to consider it." *McCarthy*, 271 F.3d at 399 (citing *United States v. Moreno*, 181 F.3d 206, 212 (2d Cir. 1999)).

### C. Discussion

Although the defendant made certain objections during the trial to some of the district court's evidentiary rulings, and made a motion for a judgment of acquittal both at the close of the government's case and following the jury's verdict, the defendant never made a motion for a new trial pursuant to Rule 33. On appeal, the defendant for the first time requests a new trial on various grounds. *See* Def. Br. at 52. Because there is nothing in the record to suggest that Sinclair made a motion for a new trial within seven days after the verdict and because none of the grounds advanced involve newly discovered evidence, those claims are barred and this Court lacks jurisdiction to consider any of the defendant's claims for which the requested relief is a new trial. *See, e.g.*, Fed. R. Crim. P. 33; *McCarthy*, 271 F.3d at 399-400; *Moreno*, 181 F.3d at 212 (citing *United States v. Bramlett*, 116 F.3d 1403, 1405 (11th Cir. 1997) ("The time limits imposed by Rule 33 are jurisdictional.").

EXCEPT OF GOV'T BRIEF - US v. SINCLAIR

---

II. THE DIS
RULING
DEFEND

A. RELI

The facts
set forth in th
discussion s(

B. Go

A distric
admit or e>
defendant's
objections t(
district cour
discretion.
F.3d 31, 40 (
F.3d 161, 1(
205 F.3d 23
are subject t
wholly arbi
*Yousef*, 32'
erroneous):
195 F.3d 83
reversed onl
*States v. D*
(arbitrary an

Where, 
the admissi(
Court revie

constitute an element of the offense of illegal re-entry, and that a sentencing judge may determine facts relating to such a conviction by a preponderance of the evidence.

# ARGUMENT

## I. THE COURT LACKS JURISDICTION TO CONSIDER THE DEFENDANT'S REQUESTS FOR A NEW TRIAL

### A. RELEVANT FACTS

During the entire proceedings below, the defendant never moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (*See, e.g.*, DA 1-7). The defendant's appeal marks the first time he has requested a new trial on any basis. Def. Br. at 52 (asking, "if the Court finds merit to arguments 1, 3, 4, 5, or 6, that it reverse the judgment of conviction and remand for a new trial."). Because the defendant never moved for a new trial in the district court, he has failed to preserve this claim and the court lacks jurisdiction to consider his request.

### B. GOVERNING LAW AND STANDARD OF REVIEW

Under Fed. R. Crim. P. 33, a district court, "[o]n a defendant's motion," may grant a defendant a new trial if one is required in the interests of justice. If a defendant makes a Rule 33 motion based on newly discovered evidence, he must do so within three years of the verdict. *See* Fed. R. Crim. P. 33. If a defendant seeks to make the motion on any other grounds, however, "he must do so seven days after the verdict or within such further time as

15

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 22nd day of December, two thousand and four.

PRESENT:

    Hon. John M. Walker, Jr.,
        Chief Judge,
    Hon. Robert D. Sack,
    Hon. Peter W. Hall,
        Circuit Judges.

(SEAL: UNITED STATES COURT OF APPEALS, FILED DEC 22 2004, Roseann B. MacKechnie, CLERK, SECOND CIRCUIT)

-------------------------------------------X
UNITED STATES OF AMERICA,

        Appellee,

   - v. -
                                      No. 03-1415
WAYNE L. SINCLAIR,

        Defendant-Appellant.

-------------------------------------------X

APPEARING FOR APPELLANT:    JEREMIAH DONOVAN, Old Saybrook, CT.

                             WAYNE L. SINCLAIR, pro se, Fort Dix, NJ.

APPEARING FOR APPELLEE: STEPHEN B. REYNOLDS, Assistant United States Attorney (Kevin J. O'Connor, United States Attorney, District of Connecticut, and William J. Nardini, Assistant United States Attorney, on the brief), Bridgeport, CT.

Appeal from the United States District Court for the District of Connecticut (Janet C. Hall, Judge).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED that the judgment of the district court is AFFIRMED.

Defendant-appellant Wayne Sinclair appeals the June 27, 2003, judgment of the United States District Court for the District of Connecticut (Janet C. Hall, Judge) convicting him, after a jury trial, of violating 8 U.S.C. § 1326 by being in the United States without the United States Attorney General's consent after having been deported. The district court sentenced Sinclair to 92 months' imprisonment followed by 3 years' supervised release and ordered him to pay a special assessment of $100.

Sinclair raises numerous claims on appeal, none of which has merit. First, he argues that the district court wrongly admitted a copy of a page from a logbook maintained by the Jamaican constabulary that purported to record Sinclair's return to Jamaica after his deportation from the United States. Sinclair claims that the logbook's admission violated both the relevant evidentiary rules and the Confrontation Clause. The district court admitted the logbook pursuant to 18 U.S.C. § 3505, which exempts from the hearsay rule "foreign record[s] of regularly conducted activity" and provides for such records to be authenticated by means of a written declaration executed by the records' custodian and meeting statutory standards.

Sinclair raised in the district court his claim that the logbook was not properly authenticated. We review properly preserved evidentiary challenges, such as this claim of Sinclair's, for abuse of discretion. United States v. Yousef, 327 F.3d 56, 156 (2d Cir. 2003). It is unclear whether the district court properly applied 18 U.S.C. § 3505, which addresses the admissibility of foreign business records, to the Jamaican logbook. The logbook was maintained by the Jamaican government, and therefore arguably was the type of "public record" that is outside the scope of § 3505. See United States v. Pluta, 176

F.3d 43, 49 (2d Cir. 1999) (holding that "[p]assports qua passports are more properly characterized as public records than business records" and were therefore not covered by § 3505 because "that section deals with business records"). We need not decide this question, however, because any error in admitting the logbook was harmless in light of other overwhelming evidence that demonstrated that Sinclair was deported to Jamaica on December 9, 1997.

Because we find that any error in admitting the logbook was harmless, we also reject Sinclair's claims that its admission violated the rule against hearsay and the Confrontation Clause. Sinclair raised neither of these challenges at trial, and we therefore review them only for plain error. We will not correct even a plain error unless it "affects substantial rights" of the defendant-appellant. Johnson v. United States, 520 U.S. 461, 467 (1997) (internal quotation marks omitted). Harmless error does not affect substantial rights.

We reject Sinclair's frivolous challenge to the sufficiency of the evidence. As noted above, the government presented overwhelming independent evidence that Sinclair was deported to Jamaica on December 9, 1997. Sinclair comes nowhere near raising a colorable sufficiency challenge.

Sinclair argues that the district court wrongly excluded copies of his financial records from 1997 to 2003. Although the excluded documents may have been marginally relevant, the district court's exclusion of them was not manifestly erroneous.

Sinclair argues that the district court wrongly excluded a letter from a Jamaican detective that stated that the Wayne Sinclair who was deported to Jamaica on December 9, 1997, was living in Jamaica and working as a computer consultant as of 2003. The district court did not abuse its discretion in determining that the letter fit within no hearsay exception and Sinclair does not challenge that determination on appeal. Sinclair presses a new claim on appeal, which we review for plain error: that the letter should have been admitted as nonhearsay, to impeach the accuracy of Jamaican government records about returning deportees. The district court did not plainly err in refusing to admit the letter on this basis.

Sinclair's final evidentiary challenge is coupled with a challenge to a jury instruction. The district court admitted testimony that Sinclair tried to flee from state court when he learned that he might be held by the INS; the district court also instructed the jury as to what use it could make of evidence of Sinclair's attempted flight. Because Sinclair did not object at trial to the testimony about his attempted flight, we review his evidentiary challenge for plain error and find none.

3

It is unclear whether Sinclair objected to the jury instruction on flight, but even if we give Sinclair the benefit of the doubt and treat this claim as properly preserved, he does not prevail. The district court's instruction, which specifically cautioned that "[f]light does not create a presumption of guilt," reflected the correct legal standard. See United States v. Amuso, 21 F.3d 1251, 1259-60 (2d Cir. 1994).

Sinclair renews on appeal his collateral attack on the order that led to his deportation on December 9, 1997. Sinclair unsuccessfully raised this challenge below in a motion to dismiss the indictment. To succeed in such a collateral attack Sinclair must satisfy all three requirements of 8 U.S.C. § 1326(d), which provides that:

> an alien [i.e., a defendant making a collateral attack] may not challenge the validity of [a] deportation order . . . unless the alien demonstrates that — (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

Because Sinclair was not "improperly deprived . . . of the opportunity for judicial review" in the challenged deportation proceedings, his collateral attack necessarily fails and we need not consider the other two elements of the statute. As Sinclair concedes, he "appealed the deportation ruling twice to the BIA and twice to the Second Circuit." Br. for Def.-Appellant at 34. We are not persuaded by Sinclair's claim that he was effectively deprived of judicial review because the Second Circuit dismissed his initial appeal as untimely and this untimeliness was caused by ineffective assistance of counsel.

Sinclair challenges the district court's reliance on information from the Federal Bureau of Prisons and the United States Probation Office in determining that the entry of the deportation order was not fundamentally unfair. Because we uphold the district court's denial of Sinclair's motion to dismiss on the grounds that he was not improperly deprived of the opportunity for judicial review, we need not, and do not, consider whether the district court properly relied on the challenged information in assessing the deportation order's fairness.

Finally, Sinclair raises two challenges based on Blakely v. Washington, 124 S. Ct. 2531 (2004). First, he argues for the first time on appeal that his indictment was defective because it did not allege, as a separate element, that Sinclair had been convicted of an aggravated felony prior to his indictment for

4

violating 8 U.S.C. § 1326. As Sinclair concedes, this argument is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224, 226 (1998). We need not decide whether Blakely casts any doubt on this aspect of Almendarez-Torres because Sinclair concedes that he was fully notified of his sentencing exposure, Pro Se Supp. Br. of Def.-Appellant at 2, and therefore any error based on the district court's failure to amend the indictment did not "seriously affect[] the fairness, integrity, or public reputation," Johnson, 520 U.S. at 467 (internal quotation marks omitted), of Sinclair's trial and is therefore not the type of plain error that this court will remedy, see id.

Sinclair also argues that his sentence is invalid under Blakely because it was enhanced on the basis of facts not found by the jury. Until the Supreme Court instructs otherwise (as it will have the opportunity to do when it decides United States v. Booker, No. 04-104, 125 S. Ct. 11 (cert. granted Aug. 2, 2004), and United States v. Fanfan, No. 04-105, 125 S. Ct. 12 (cert. granted Aug. 2, 2004)), we assume that Blakely does not affect the Guidelines and, accordingly, that all sentences imposed in accordance with the Guidelines are valid. See United States v. Mincey, 380 F.3d 102, 106 (2d Cir. 2004). Because Sinclair argues only that his sentence is invalid under Blakely, and does not argue that his sentence violates the Sentencing Guidelines, we reject his sentencing challenges.

Notwithstanding the foregoing, the mandate in this case will be held pending the Supreme Court's decision in Booker and Fanfan. Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address the defendant's sentence until after the Supreme Court's decision in Booker and Fanfan. In that regard, the parties will have until 14 days following the Supreme Court's decision to file supplemental petitions for rehearing in light of Booker and Fanfan.

5

```
 1        We have considered carefully all of Sinclair's arguments and
 2   find them to be without merit.  For the foregoing reasons, the
 3   judgment of the district court is hereby AFFIRMED.
 4
 5                              FOR THE COURT:
 6                              Roseann B. MacKechnie, Clerk
 7
 8
 9                              By: /s/ Lucille Carr
10                              Lucille Carr, Deputy Clerk
11
```

5

government in its response concerning this issue are indicative: none contains any indication that the defense is required to do anything more than preserve the issue at the time of the trial. In <u>United States v. Ballistrea</u>, 101 F.3d 827, 837 (2d Cir. 1996), it does not appear that any post-trial motion raising the immunity question was made. <u>United States v. Todara</u>, 744 F.2d 5, 10 (2d Cir. 1984), was a government appeal. In <u>United States v. Turkish</u>, 623 F.2d 769, 777 (2d Cir. 1980), when the defendants raised the issue at trial, the trial court indicated that it would rule on the issue post-trial. The defendants did file motions for new trial, and the trial court ruled on the issue after the completion of the trial, but there was no appellate suggestion that the filing of such a motion was necessary in order to preserve the issue for appeal, and certainly no suggestion that in a case such as this, in which the Court's ruling was made mid-trial, that any post-verdict motion was necessary.

Similarly, with respect to the government's successful application to the Court, later the subject of second thoughts, to order that counsel not communicate with the defendant during his testimony, none of the major cases on this issue contains any indication that the defendant, having preserved such an issue at trial, thereafter took the trouble to raise the issue again in a post-verdict motion -- and there is no indication that the failure to do so in any way restricted appellate review of the issue. There is no mention of any post-verdict motion in <u>Geders v. United States</u>, 425 U.S. 80 (1976). In <u>Jones v. Vacco</u>, 126 F.3d 408 (2d Cir. 1997), a habeas case in which the state raised a large number of claims concerning procedural bars to appellate review, it appears that the defense made no post-verdict motion concerning the issue, and the state made no claim that this failure barred appellate review. In the context of that case, in which the state relied upon every procedural failure imaginable in order to avoid appellate review, the state's failure to raise the issue and the Court of Appeals failure to mention it is a fairly clear indication that no one believes that an issue, having been raised and ruled upon at trial, must be raised and ruled upon again in a post-trial motion in order to secure appellate review of the issue.